480 So.2d 1382 (1985)
LAW OFFICES OF EVAN I. FETTERMAN, Appellant,
v.
INTER-TEL INCORPORATED, et al., Appellee.
No. 85-986.
District Court of Appeal of Florida, Fourth District.
December 31, 1985.
*1383 Philip N. Sherwin of Law Offices of Fetterman & Associates, North Palm Beach, for appellant.
Brian R. Brattebo and Nancy Malley Graham of Steel, Hector, Davis, Burns & Middleton, Palm Beach, for appellee.
HERSEY, Chief Judge.
Appealed is an order granting a motion to quash service of process and to dismiss for lack of jurisdiction over the defendant foreign corporation. We affirm quashal but reverse dismissal.
Appellant agreed to purchase from American Telefonics Incorporated a telephone system manufactured by appellee, Inter-Tel. Experiencing problems with the equipment after its installation, appellant filed a complaint against seller and manufacturer.
In support of its motion to quash and to dismiss, appellee filed affidavits to the effect that Inter-Tel was an Arizona corporation whose business was the research, development and sale of telephone systems; that American was a Florida corporation that occasionally purchased telephone systems from Inter-Tel for subsequent resale; that Inter-Tel's sales to American constituted less than one percent of Inter-Tel's gross annual sales, that American was not an agent of Inter-Tel and Inter-Tel exercised no control over the telephone systems after it sold and shipped them to American; that Inter-Tel did not know the location or identity of the ultimate purchasers of the systems; that Inter-Tel was not qualified to do business in Florida and did not appoint any person or entity to accept service of process in Florida; that Inter-Tel did not communicate with appellant about the sale of the telephone system in question; that Inter-Tel had no offices, real or personal property, bank accounts, telephone listings, advertising, or employees in Florida; that Inter-Tel occasionally sold its products to several companies in Florida other than American and, as with past sales to American, all of Inter-Tel's products were sold F.O.B. Phoenix; and that Inter-Tel did not sell or deliver products or services to any ultimate purchasers.
Appellant's principal, Fetterman, countered that prior to the purchase of the system, Fetterman had direct communication with Inter-Tel by way of a letter. Furthermore, he met with Inter-Tel sales representative Melody Keyslay in his (Fetterman's) office in North Palm Beach, and Keyslay assured him that Inter-Tel would stand behind and service its product. The letter from Inter-Tel to Fetterman provided:
Mr. Evan Fetterman
The Lawteam-Fetterman and Associates
21 N. Lake Blvd., Suite 103
No. Palm Beach, Florida 33408
Dear Mr. Fetterman:
On behalf of our authorized dealer, American Telefonics, Inc. Inter-Tel is pleased to *1384 offer the following with regards to service and support of our products.
Inter-Tel will make parts available for the MPK and SPK systems for a period of ten (10) years after the termination of manufacturing and will perform all warranty work requests consistent with the terms of our standard warranty, a copy of which is attached.
Inter-Tel will arrange for maintenance of our products through our authorized network, if for any reason American Telefonics cannot perform. If such failure occurs during the installation warranty period (one year), support will be subject to the terms of our standard warranty. Subsequent maintenance will be charged by the authorized dealer assigned by Inter-Tel at prevailing rates.
Parts for our systems are stocked in Chandler, Arizona and are deliverable on an overnight basis. Though the stock supports the authorized dealer's field inventory, we assume responsibility for availability if the authorizing dealer is not in a stocking position.
Maintenance support is a demand service by the customer. If for any reason you are dissatisfied with the service you receive from our authorized dealer, please contact Inter-Tel at 6505 West Williams Field Road, Chandler Arizona 85224 or call (800) 523-8180.
Sincerely,
INTER-TEL EQUIPMENT, INC.
s/ Matthew M. Mihaylo
Matthew M. Mihaylo
Senior Vice President  Sales
 MM:rp
Attach.
cc: Richard Bryer
 American Telefonics
Inter-Tel attached a warranty to the letter that warranted the equipment to be free from defects in material, workmanship, or both, for one year. The trial court entered an order dismissing the complaint and quashing service of process for lack of personal jurisdiction over Inter-Tel. It found that American was an authorized dealer and agent of Inter-Tel but that Inter-Tel lacked control over the product and purchaser of the product after it left the Inter-Tel factory, relying on Maschinenfabrik Seydelmann v. Altman, 468 So.2d 286 (Fla. 2d DCA 1985).
As we held in Youngblood v. Citrus Associates of New York Cotton Exchange, Inc., 276 So.2d 505 (Fla. 4th DCA), cert. denied, 285 So.2d 26 (Fla. 1973):
The Florida "long-arm" statutes ... require more activities or contacts to sustain service of process than are currently required by the decisions of the United States Supreme Court. Therefore, any analysis of the question of whether jurisdiction in personam has been acquired over a foreign corporation must necessarily start with an analysis of the statutes.
Id. at 508 (footnote omitted).
Section 48.181, Florida Statutes (1983) provides in part:
(1) The acceptance by any person or ... any ... type of association ... of the privilege extended by law ... to operate, conduct, engage in, or carry on a business or business venture in the state ... constitutes an appointment by the persons and foreign corporations of the Secretary of State of the state as their agent on whom all process in any action . .. arising out of any transaction or operation connected with or incidental to the business or business venture may be served.
... .
(3) Any person, firm or corporation which sells, consigns, or leases by any means whatsoever tangible or intangible personal property, through brokers, jobbers, wholesalers, or distributors to any person, firm, or corporation in this state shall be conclusively presumed to be operating, conducting, engaging in or carrying on a business venture in this state.
We find the case relied upon by the trial court as well as the cases relied upon here by the appellee to be distinguishable from *1385 the facts of this case. In Seydelmann the court found that while the manufacturer enjoyed an indirect economic benefit from sales of its products in Florida and that it was foreseeable that one of these products would find its way to Florida and cause an injury, these factors were insufficient to satisfy due process requirements in the absence of evidence that the foreign manufacturer availed itself of the privilege of doing business in Florida. Where the manufacturer had no control over the product or the purchaser of the product in Florida, there was nothing on which the long arm statute could operate. To the same effect is the holding in American Baseball Cap, Inc. v. Duzinski, 359 So.2d 483 (Fla. 1st DCA 1978), cert. discharged, 366 So.2d 443 (Fla. 1979), involving analysis of subsections (1) and (3) of section 48.181, Florida Statutes, where the court found that lack of control over both the product and its Florida handler was fatal to long arm jurisdiction. Lack of control over a sole distributor by the foreign manufacturer-defendant in AB CTC v. Morejon, 324 So.2d 625 (Fla. 1975), prevented long arm jurisdiction from attaching.
The converse of the general rule established by this line of cases is illustrated by Dico Company, Inc. v. Meekins, Inc., 407 So.2d 1067 (Fla. 4th DCA 1981), where we stated:
Generally, the burden of pleading under the long arm statute rests first with the plaintiff to allege sufficient jurisdictional facts to show compliance with the statute. The burden then shifts to the defendant to make a prima facie showing of the inapplicability of the long arm statute. Thereafter, the plaintiff is required to substantiate the jurisdictional allegations.
407 So.2d at 1068. This court concluded that Meekins substantiated its jurisdictional allegations by showing, through a deposition and agreement, that Dico had control over the dealer and the product.
Applying that rule here, we hold that the trial court erred in finding that there was no personal jurisdiction over Inter-Tel. This case is distinguishable from Seydelmann, Duzinski, and Morejon, because in those cases there was no control by the foreign manufacturer over either the retailer or the products after the products left the manufacturer. In this case, the record does not show that Inter-Tel had or exercised any control over American Telefonics, its "authorized dealer." However, the record does show that Inter-Tel had control over its products after they left Inter-Tel. In its letter to appellant (the ultimate purchaser of the product) Inter-Tel stated that it would make parts available and would perform all warranty work requests consistent with its attached standard warranty. It said that it would arrange for maintenance of its product through its authorized network, if American could not perform. Finally, Inter-Tel said that its parts were deliverable on an overnight basis and that it would be responsible for their availability if American could not perform. Therefore, Inter-Tel had control over its products after they were sold to American and then finally to appellant.
An alternative basis for jurisdiction in this case is section 48.193(1)(f)2, Florida Statutes (1983), which provides:
48.193 Acts subjecting persons to jurisdiction of courts of state. 
(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits that person and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following:
... .
(f) Causes injury to persons or property within this state arising out of an act or omission outside of this state by the defendant, provided that at the time of the injury... .
... .
2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use, and *1386 the use or consumption resulted in the injury.
As set forth in Lacy v. Force V Corp., 403 So.2d 1050 (Fla. 1st DCA 1981), in determining whether a Florida court has personal jurisdiction over a foreign corporation under section 48.193, "the single most important factor to be considered is whether `the defendant's conduct and connection with the forum ... are such that he should reasonably anticipate being haled into court there... .'" 403 So.2d at 1054. Depending upon the facts, a single transaction by the out-of-state defendant may be enough to permit the exercise of jurisdiction in Florida. Id. This has been found particularly true in cases involving sales of products to Florida customers. A.J. Sackett and Sons Co. v. Frey, 462 So.2d 98 (Fla. 2d DCA 1985). In the Sackett case, as here, the product which caused the injury was sold by the out-of-state defendant to a Florida customer, who then resold it to Florida plaintiffs. In finding that the Florida court had jurisdiction over the defendant, the appellate court reasoned that "[a] manufacturer who sells a piece of machinery in Florida can hardly take the position that he could not reasonably anticipate being hailed into a Florida court in a dispute over the quality of that machinery." Id. at 99. The position for jurisdiction is actually stronger in the instant case than in Sackett, since Inter-Tel admitted it had made other sales to American as well.
Another factually similar case is Pennington Grain & Seed, Inc. v. Murrow Brothers Seed Co., 400 So.2d 157 (Fla. 1st DCA 1981) where jurisdiction was found in Florida by virtue of the fact that the out-of-state seller delivered its product to a Florida location. The court held that the courts of a state have jurisdiction over a corporation which "purposefully avails" itself of the privilege of conducting activities in that state, and "`[i]f the manufacturer sells its products in circumstances such that it knows or should reasonably anticipate that they will ultimately be resold in a particular state, it should be held to have purposefully availed itself of the market for its products in that state.'" Id. at 160. The court concluded that where the defendant delivered its product to Florida, it knew the product would be resold here, and thus it was serving the Florida market for the product.
In its order, the trial court granted the motion to quash service of process as well as the motion to dismiss. Appellee, in its motion to quash/dismiss, alleged that appellant had failed to comply with the requirements for substituted service on a nonresident set forth in section 48.161, Florida Statutes (1983), which included the filing of a timely affidavit of compliance.
Section 48.161, Florida Statutes (1983), requires that the affidavit of compliance be filed on or before the return day of process or within such time as the court allows. In Smith v. Import Birds, Inc., 461 So.2d 1026 (Fla. 4th DCA 1985), plaintiff failed to file his affidavit of compliance by the return day of process. This court said: "Unless the plaintiff has strictly complied with Section 48.161, the circuit court does not have jurisdiction." Id. at 1026-27. It therefore held that the trial court should have granted defendant's motion to quash, and it remanded to the trial court with directions to quash service of process.
Appellant in this case did not timely file an affidavit of compliance, nor did it argue on appeal that the quashal of service of process was error. Therefore, that portion of the trial court's order is affirmed. However, we reverse the order of dismissal and remand with instructions to permit appellant an opportunity to perfect service of process and for such further proceedings as may be appropriate.
DELL and WALDEN, JJ., concur.